# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| KATE VIEMEISTER-HEESEMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Case No.: 20-cv-19582-MAS-LHG |
| | ) |
| EQUIFAX CREDIT INFORMATION SERVICES, L.L.C.; EXPERIAN INFORMATION SOLUTIONS, INC., | ) ) ) |
| | ) |
| Defendants. | ) ) |

**DECLARATION OF DAVID WILLIAMS IN SUPPORT OF DEFENDANT EXPERIAN INFORMATION SOLUTIONS, INC.'S MOTION TO COMPEL ARBITRATION**

## DECLARATION OF DAVID WILLIAMS

I, David Williams, declare and state:

1. I am over the age of 18 years old. I am the VP, Business Governance for ConsumerInfo.com, Inc. ("CIC") in Costa Mesa, California. CIC also does business as Experian Consumer Services ("ECS"). I have been employed by CIC since June of 2001. I make this declaration in support of Experian Information Solutions, Inc.'s Motion to Compel Arbitration. My duties at CIC throughout the course of my employment require that I be familiar with, among other things, the marketing, advertising and sales of CIC consumer credit products, including services that consumer enroll in at Experian websites, as well as the Terms of Use governing such services. Except where otherwise stated, the facts stated in this Declaration are of my own personal knowledge, including knowledge acquired in the course and scope of my job responsibilities and through the review of pertinent documents maintained as business records by CIC in the course and scope of CIC's business, documents relating to CIC's internet advertising, and documents relating to sales of CIC's credit products and services. If called upon to do so, I could and would competently testify to the facts stated below.

2. CIC/ECS is an affiliate of Experian Information Solutions, Inc. ("EIS"), the named defendant in the above-captioned lawsuit. CIC and EIS are both wholly-owned subsidiaries of Experian Holdings, Inc., and the parent company is Experian plc. In this Declaration, I refer to Experian collectively as CIC, ECS, and EIS.

3. On January 12, 2019, Plaintiff enrolled in CreditWorks℠. In order to successfully enroll, she had to complete two webforms. The first form required Plaintiff to enter her personal information—*i.e.*, her name, address, phone number, and e-mail address. After she did so, Plaintiff had to click the "Submit and Continue" button on the form to continue with the enrollment process. A true and correct representation of the first webform as it would have appeared when Plaintiff enrolled in CreditWorks℠ is attached as **Exhibit 1** to this Declaration. Plaintiff clicked the "Submit and Continue" button, and was presented with a second form to complete. I know this to

be the case because she would not have been able to successfully enroll in CreditWorks℠ unless she clicked that button.

   4.  The second webform required Plaintiff to enter her social security number, date of birth, and a username and password. Immediately below the boxes to enter and confirm her password, was the following disclosure:

A true and correct representation of the second webform as it would have appeared when Plaintiff enrolled in CreditWorks℠ is attached as **Exhibit 2** to this Declaration. The phrase "Terms of Use Agreement" in the disclosure above was off-set in blue text and, if clicked, would have presented the consumer with the full text of the agreement. That is, the phrase "Terms of Use Agreement" in the disclosure was a full text hyperlink to the Terms of Use. Thus, before clicking the "Submit Secure Order" button, the consumer could view the entire text of the Terms of Use Agreement by clicking on the blue-highlighted hyperlink "Terms of Use Agreement." When a consumer clicked on the "Terms of Use Agreement" hyperlink, an additional window would open within the consumer's web browser containing the entire text of the Terms of Use Agreement. Immediately

below the disclosure containing the full-text hyperlink to the Terms of Use Agreement was a large purple button that reads: "Submit Secure Order." The webform, the disclosure, and the "Submit Secure Order" button appeared on a single webpage. After entering her information, Plaintiff clicked the "Submit Secure Order" order button, thereby accepting and agreeing to the Terms of Use Agreement. I know this to be the case because she would not have been able to successfully enroll in CreditWorks℠ unless she clicked that button. A true and correct copy of the Terms of Use that was in effect when Plaintiff enrolled in CreditWorks℠ is attached as **Exhibit 3** to this Declaration.

5.  The Terms of Use Agreement that was in effect when Plaintiff enrolled in CreditWorks℠, and all subsequent amended Terms of Use Agreements applicable to her account, had a section entitled, "Amendments," which advised Plaintiff that she would be bound by the then-current Terms of Use Agreement each time she "order[ed], access[ed], or use[d]" any of the Services or Websites described in the agreement. Since enrolling in CreditWorks℠, Plaintiff has continuously used her subscription service, including after the current version of the Terms of Use came into effect. A true and correct copy of the current (operative) Terms of Use is attached as **Exhibit 4** to this Declaration.

6.  I have reviewed Plantiff's complaint in this case. She alleged that, on or about January 25, 2019, she called Experian and was told that she was part of a data breach and needed to lock her credit. Plaintiff also alleges that she "did not authorize a lock during at this time or at any time before or after." During that same time, Plaintiff obtained reports through her CreditWorks subscription showing her accounts.

7.  Plaintiff alleges that, in June 2019, she began applying for student loans for her son to attend college. She alleges that her "loan application was denied as the lender was unable to access [her] credit file because of a lock." During June 2019, Plaintiff obtained five reports through her CreditWorks subscription showing her accounts.

8.  Plaintiff alleges that, on or about July 2, 2019, she "applied for a loan and received an email from Defendant Experian that it blocked the inquiry 'because your Experian credit file is

locked.'"  She alleges that on July 18, 2019, after several attempts to get the freeze lifted, she "applied for a loan and was told by both the lender and Defendant Experian that it was blocked because Plaintiff's 'Experian credit file is locked.'"  That same day, Plaintiff obtained several reports through her CreditWorks subscription showing her accounts.

9. Plaintiff alleges that, in February 2020, she applied for a credit card with Chase.  She alleges that "Chase informed [her] that it could not access her credit file from Defendant Experian 'because of safeguards you requested from the credit reporting agency.'"  In mid-February 2020, Plaintiff obtained another report through her CreditWorks subscription showing her accounts.  On June 24, 2020, Plaintiff alleges that she applied for student loans for her son.  That same day, Plaintiff obtained another report through her CreditWorks subscription showing her accounts.

I declare, under penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct.  Executed this 27th day of August, 2021, in Costa Mesa, California.

_____
David Williams